UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICHARD RINCON, JR., *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | CIVIL ACTION H-06-538 |
| | § | |
| B.P. SECURITY & | § | |
| INVESTIGATIONS, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

A hearing was held on plaintiff's opposed motion for class notice and expedited discovery (Dkt. 18) on December 1, 2006. Having considered the briefs, supporting evidence, and testimony presented at the hearing, the court concludes that plaintiffs' motion for class notice should be GRANTED in part.

This is a suit to recover unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201 *et seq*. Plaintiff Richard Rincon, Jr. was an employee of defendant B.P. Security and Investigations Inc., working as a private security guard at the Toyota Center. Rincon complains that his paychecks did not reflect all the hours recorded on his electronic time cards. Specifically, Rincon asserts that he would clock in fifteen minutes prior to his scheduled shift, but not receive pay for the time stamped on his time card; in other words, his paycheck was based on his work schedule rather than actual hours worked. Rincon brings this suit on behalf of himself and other similarly situated employees of B.P.

Security[1] who worked more than 40 hours in any weekly period and were denied overtime pay as required by 29 U.S.C. § 207(a).

Section 16(b) of the FLSA[2] permits an employee to bring suit against an employer "for and in behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). Unlike a standard class action under Federal Rule of Civil Procedure 23(c), section 216(b) provides an "opt-in" rather than "opt-out" procedure. *See Villatoro v. Kim Son Rest., L.P.*, 286 F. Supp. 2d 807, 809 (S.D. Tex. 2003). Courts have discretion to allow a party asserting FLSA claims on behalf of others to notify potential plaintiffs that they may choose to opt-in to the suit. *See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 168-70 (1989). The standard for this "collective action" notice is more lenient than that for a class action. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995).

The most commonly used approach for this process in this district is the "two-stage" *Lusardi* method. *See Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D. N.J. 1987); *Badgett v. Texas Taco Cabana, L.P.,* No. Civ.A. H-05-3624, 2006 WL 2934265 at *2 (S.D.Tex. 2006). The two stages are the "notice stage," and if necessary, the "decertification stage." At the notice stage, the court initially determines whether the proposed class members are similarly situated to the named plaintiff. *Mooney*, 54 F.3d at 1213. In making this determination,

---

[1] Plaintiff's amended complaint names B.P. National Security Inc. and B.P. Worldwide Security Inc. as additional defendants. Testimony at the class certification hearing reflected common ownership, management, and employees among these companies. For purposes of this order, therefore, "B.P. Security" will refer to all three defendants.

[2] 29 U.S.C. §§ 201, et seq.

"courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." *Id.* at 1214 n.8 (citation omitted). Nevertheless, the plaintiff bears the burden of proof of making a preliminary factual showing that a similarly situated group of potential plaintiffs exist. *See H&R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999). Relevant to such a showing are "factors such as whether potential plaintiffs were identified . . . whether affidavits of potential plaintiffs were submitted . . . and whether evidence of a widespread discriminatory plan was submitted . . . ." *Id.* (citations omitted). As another judge of this court has recently observed, "while the standard at this stage is lenient, it is not automatic." *See Badgett*, 2006 WL 2934265 at *2.

Here Rincon asserts that armed security guards, unarmed security guards, private investigators, and personal protection who worked for B.P. Security anywhere in the United States during the period of February 16, 2003 and forward are similarly situated class members. Nonetheless, after careful consideration this court concludes that only B.P. Security guards who worked at the Toyota Center are similarly situated to Rincon.

At the outset it is important to recognize what this case is <u>not</u> about. There is no allegation that the employer has mis-classified certain jobs as exempt, or erroneously relied upon a particular overtime exemption, or maintained a facially invalid company policy in violation of the FLSA.[3] Instead, this case concerns a claim that the employer's payroll

---

[3] Rincon points to the "Hours of Duty" policy in the company handbook, which "encouraged" employees to be at their assigned post 10 minutes before the start of their shift.

department systemically undercounted hours actually worked in certain situations, in violation of the employer's stated policy of compensating employees for all hours worked.

Rincon's basic complaint is that he would clock in early and not get paid for the time recorded on his time card. According to Levi Richey, a former payroll manager for B.P. Services, the time cards were routinely compared to the employee's scheduled work hours; if the time card reflected an earlier than scheduled start time, then the payroll department would routinely revise the time cards downward to conform with the work schedule, to the employee's detriment. Richey also claimed that the company often failed to follow its policy of "rounding" fractional hours worked to the nearest quarter hour, and instead automatically rounded such hours down.

Richey testified that these payroll practices affected numerous security guards who, like Rincon, worked at the Toyota Center.[4] He personally received numerous complaints about the time-cards from Toyota Center security guards, and was able to identify at least one of those other employees by name. Clearly then, security guards who worked at the Toyota Center are similarly situated to plaintiff Rincon in significantly material respects.

Away from the Toyota Center, however, the record tells a different story. Only one other BP Security client, Kelsey Seybold medical clinic, employed an electronic time-card

---

Even if this "encouragement" was in reality a requirement, as plaintiffs contend, the policy does not in itself violate the FLSA, because it continues: "You are paid for the entire time you are on post unless otherwise specified." Dkt. 20, Ex.C.

[4]   The Toyota Center is the arena for Houston's professional basketball teams.

4

system like the one used at the Toyota Center. Yet there is no evidence that any security guards assigned to Kelsey Seybold were shortchanged overtime hours as a result of revised time-cards. Rincon has submitted no supporting affidavits from any Kelsey Seybold security guard. Perhaps more significantly, payroll manager Richey testified that he usually had no time card problems at all with Kelsey Seybold, and that he did not recall any Kelsey Seybold employees complaining about time card discrepancies. Moreover, Richey distinguished the situation at the Toyota Center by noting that it was a larger venue and consequently would require a much longer walk for the guards to reach their assigned posts after punching in. For these reasons, there is insufficient basis on this record to conclude that security guards assigned to Kelsey Seybold were similarly situated to those at the Toyota Center.

Even less comparable are the remainder of BP Security employees, whose working hours are not recorded by time cards, but rather on time sheets which they themselves fill out and submit. While Richey testified that any discrepancies between the time sheets and work schedules were referred to the operations department for resolution, he had no way of knowing whether those discrepancies were unfairly resolved against the employee because he could not know whether the employees actually worked the hours claimed on the time sheets. Nor does the record show that any employee ever complained of time sheets being revised to conform to a pre-existing work schedule, like the Toyota Center time cards. Plaintiff Huffstetter was a time sheet employee, but his complaint is not that his time sheet was systemically altered after the fact, but rather that he should have been paid for time not

reflected on his time sheet, such as time spent relaying shift information to other security guards before and after his scheduled shift. Neither Huffstetter nor Richey identified any other time sheet employee with a similar overtime complaint.

On this record, therefore, the only similarly situated employees are security guards assigned to the Toyota Center whose time cards were allegedly revised to conform to the posted work schedule. Accordingly, this case is "conditionally certified" as a collective action under 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees of B.P. Security and Investigations, Inc., B.P. National Security, Inc., and B.P. Worldwide Security, Inc. who were security guards assigned to the Toyota Center during the period of February 16, 2003 to the present. It is further ORDERED that

1. The parties submit proposed notice and consent forms by December 27, 2006.

2. Defendant provide the names, last known addresses, and telephone numbers of putative class members to plaintiffs' counsel by January 3, 2007. Dates of birth and social security numbers must also be provided for any putative class member whose mailed notice is returned as undeliverable.

Signed at Houston, Texas on December 19, 2006.

Stephen Wm Smith
United States Magistrate Judge